David A. Berstein (State Bar No. 204472)
J.R. Dimuzio (State Bar No. 299803)
BERSTEIN LAW, PC
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660
Tel.: 949-783-4210
Email: david@bersteinlaw.com; jr@bersteinlaw.com

Attorneys for Plaintiff My Gameroom, LLC



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MY GAMEROOM, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC., a Rhode Island corporation; KILBURN MEDIA, LLC, a California limited liability company; KILBURN LIVE, LLC, a Delaware limited liability company, KH FEC, LLC, a Delaware limited liability company, TGR AD, LLC, a Delaware limited liability company; THE GAME ROOM FEC, LLC, a Delaware limited liability company; and DOES 1 through 10,<br><br>Defendants. | **Case No. 2:25-cv-07392-MCS-MBK**<br><br>**PLAINTIFF MY GAMEROOM LLC OPPOSITION TO DEFENDANTS HASBRO, INC., AND KILBURN MEDIA LLC'S NOTICE OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date: September 14, 2026<br>Time: 9:00 a.m.<br>Ctrm.: 7C<br><br>Assigned to the Hon. Mark C. Scarsi<br>Action Filed: August 8, 2025 |

Plaintiff My Gameroom, LLC ("Plaintiff") hereby submits this Opposition to Defendants Hasbro, Inc., and Kilburn Media LLC ("Defendant") Motion for Summary Judgment.

# TABLE OF CONTENTS

I. **INTRODUCTION** ........ 7
II. **SUMMARY OF FACTS** ........ 7
A. **Plaintiff's Marks and the Parties' Competing Gaming and Entertainment Offerings** ........ 7
B. **"THE GAMEROOM" IS USED IN THE MARKETPLACE WITHOUT "POWERED BY HASBRO"** ........ 9
C. **Hasbro Publicly Presented THE GAMEROOM as a Hasbro-Branded Venture, Not Merely an Unrelated Licensee's Business** ........ 10
D. **The Public Record Likewise Shows a Substantive Connection Between Kilburn Media and the Hasbro Venture** ........ 11
E. **The Discovery Record Does Not Establish an Absence of Evidence** ........ 12
III. ARGUMENT ........ 13
A. **Defendants' "No Evidence" Premise Is Incorrect and Triable Issues Concerning Hasbro's and Kilburn Media's Participation in the Challenged Conduct Exist** ........ 14
1. **Plaintiff's Discovery Responses Do Not Bar Evidence** ........ 14
2. **Plaintiff is no Limited to a Secondary-Liability Theory** ........ 15
3. **Triable Issues Exist as to Secondary Liability** ........ 17
B. **LIKELIHOOD OF CONFUSION CANNOT BE RESOLVED AS A MATTER OF LAW** ........ 18
1. **Strength of the Marks** ........ 19
2. **Evidence of Actual Confusion** ........ 20
3. **Type of Services and Purchasers Degree of Care** ........ 21
4. **Labeling and Appearance of Advertisements** ........ 21
5. **Proximity of Services** ........ 22

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

6. **Similarity of Marks** .......................................... 23

7. **Marketing Channels** .......................................... 23

8. **Defendants' Intent** .......................................... 24

9. **Likelihood of Expansion of Product Lines** .......................... 24

C. **Plaintiff's UCL and FAL Claims Survive with its Lanham Act Claims** .......................................... 25

IV. CONCLUSION .......................................... 26

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

# TABLE OF AUTHORITIES

**Cases**


*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) .......................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–325, 106 S.Ct. 2548, 2552–2554 (1986)............................. 13

*Nissan Fire & Marine Ins. Co., Ltd.*, *210 F.3d at 1102–1103*……………................................... 13

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012)…......................... 14

*Interstellar Starship Services, Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111–1112 (9th Cir. 1999)................. 14

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, *210 F.3d 1099, 1105 (9th Cir. 2000)*........................... 14

*Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 588 (C.D. Cal. 1999) ......................... 15

*Infanzon v. Allstate Ins. Co., 335 F.R.D. 305, 311 (C.D. Cal. 2020)*............................................. 15

*In re PFA Insurance Marketing Litig., 696 F. Supp. 3d 822, 834 (C.D. Cal. 2022)*…........................................ 15

*Merchant v. Corizon Health, Inc.*, *993 F.3d 733, 740-742 (9th Cir. 2021)*.............................. 15

*Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826-827 (9th Cir. 2011)…….............................................. 15

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012)…………………………………… 16


BERSTEIN LAW, PC
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660

*Gianni Versace, S.p.A. v. Versace 19.69 Abbigliamento Sportivo SRL*,
328 F. Supp. 3d 1007, 1027 (N.D. Cal. 2018)……………………………… 16
*Atari Interactive, Inc. v. Redbubble, Inc.*,
515 F. Supp. 3d 1089, 1101 (N.D. Cal. 2021)........................................... 16
*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788, 795 (9th Cir. 2007) ............................................................ 17
*Gianni Versace*, 328 F …………………………………………………..……. 17
*Bangkok Broadcasting & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d
1101, 1109 (C.D. Cal. 2010)…………………………………………….……… 18
*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137, 1146 (9th Cir. 2011)………………………………………19
*Marketquest Group, Inc. v. BIC Corp.*, 316 F.
Supp. 3d 1234, 1270 (S.D. Cal. 2018)……………………………………19
*Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*,
174 F.3d 1036, 1050 (9th Cir. 1999)………………………………………….. 20
*Network Automation,* 638 F.3d at 1144……………………..…………..…… 20
*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th
711, 722 (9th Cir. 2024)………………………………………………..………21
*Brookfield*, 174 F.3d at 1044………………………………………..………..…… 21
*Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190, 1212 (9th Cir. 2012)……………………………..…..…. 22
*Brookfield*, 174 F.3d at 1059……………………………………………..……… 24
*AMF Inc. v. Sleekcraft Boats*, 599 F.2d
341, 354 (9th Cir. 1979)………………………………………………………. 24
*Network Automation*, 638 F.3d at 1144………………………………………...…. 24
*Cleary v. News Corp.*, 30 F.3d
1255, 1262–1263 (9th Cir. 1994)……………………………………………. 26
*Alsa Refinish LLC v. Home Depot, Inc.*,

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

2025 WL 2014281, at *6 (C.D. Cal. Mar. 18, 2025)…………..……………. 26

**Statutes**

Fed.R.Civ.Proc. 56........................................................................... 14

Fed.R.Civ.Proc 37 ........................................................................... 15

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION

## I. INTRODUCTION

Defendants' Motion rests on a series of factual premises the record does not support. Plaintiff does not stand before the Court with "no evidence." The record includes Defendants' own agreements, public statements, trademark filings, marketplace materials, and THE GAMEROOM website. From this evidence, a reasonable jury could conclude that Hasbro and Kilburn Media participated materially in the development, promotion, and commercial use of THE GAMEROOM, and that their roles exceeded the passive "licensor" and "guarantor" labels advanced in the Motion.

The same record forecloses summary adjudication of likelihood of confusion. Defendants' accused designation appears repeatedly as THE GAMEROOM or GAMEROOM without "Powered by Hasbro"; both parties offer gaming and entertainment services to overlapping consumers; and both use Internet-facing channels to reach those consumers. These facts create genuine disputes under the *Sleekcraft* factors that cannot be resolved by selecting Defendants' preferred inferences.

Finally, Plaintiff's discovery objections do not erase otherwise admissible evidence, particularly where Defendants never moved to compel or obtained any violated discovery order. Because genuine disputes of material fact permeate Defendants' liability and confusion arguments, summary judgment should be denied.

## II. SUMMARY OF FACTS

### A. PLAINTIFF'S MARKS AND THE PARTIES' COMPETING GAMING AND ENTERTAINMENT OFFERINGS

Plaintiff My Gameroom, LLC ("My Gameroom") owns and uses the federally registered MY GAMEROOM and MYGAMEROOM marks in connection with gaming and entertainment services offered through My Gameroom's online platform. (SDF # 23, 26). Defendants characterize Plaintiff narrowly as an online "casino-style" gaming business directed to adults and contrast that business with THE GAMEROOM as a

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

wholly distinct, single-location family entertainment venue. (SDF # 1-3, 26-27). The marketplace evidence, however, presents a materially more nuanced picture. (SDF # 1-3, 25-27).

THE GAMEROOM is itself marketed as a gaming and entertainment destination, including an arcade offering more than 150 games, Hasbro-branded attractions, interactive competition, dining, a bar, social events, and other entertainment experiences. (SDF # 2, 25). Its own website invites consumers to "GET READY TO PLAY!" and promotes the "GAMEROOM ARCADE," along with Hasbro-themed attractions and games. (SDF # 25). The venue is marketed not only for family outings, but also for "special celebrations, date nights and everything in between". (SDF # 2).

Nor is THE GAMEROOM marketed exclusively to children or families. (SDF # 2, 26-27). Its website advertises a bar and "signature cocktail," promotes corporate events and large-scale buyouts, and markets event space to groups ranging from approximately ten to more than 1,000 people. (SDF # 2, 25). This broader audience is consistent with Hasbro's own 2024 investor remarks, in which Hasbro's CEO stated that more than sixty percent of Hasbro's revenue is generated from consumers age thirteen and older. (SDF # 6).

The distinction Defendants draw between an "online" Plaintiff and an exclusively "brick-and-mortar" THE GAMEROOM likewise understates the role of the Internet in THE GAMEROOM's consumer-facing business. (SDF # 1, 3, 25). Although gameplay at the New Jersey venue occurs physically, THE GAMEROOM uses its website to solicit and transact with consumers. *Id*. The website enables or invites customers to "BOOK A GAME," "BOOK A TABLE," and arrange birthdays and events. *Id*. It offers functions to buy a Gamecard, check a Gamecard balance, and reload a Gamecard, and it solicits consumers' email addresses for THE GAMEROOM deals and promotions. *Id*. Its FAQ likewise addresses online bookings, reservations, promotions, gift cards, Gamecard activity, and related customer interactions. *Id*. Thus, both parties use Internet-based channels to reach consumers seeking gaming and entertainment services. (SDF # 3, 25-

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

26).

### B. "THE GAMEROOM" IS USED IN THE MARKETPLACE WITHOUT "POWERED BY HASBRO"

Defendants place substantial weight on the assertion that "THE GAMEROOM" never appears without the words "Powered by Hasbro". (See Mot. at pg. 3; SUF ¶ 4). THE GAMEROOM's own website contradicts that categorical assertion. (SDF # 4, 25).

The website does display a logo incorporating "THE GAMEROOM Powered by Hasbro". *Id*. But throughout the same website, the business is repeatedly identified simply as THE GAMEROOM or GAMEROOM. *Id*. The homepage tells consumers to "[s]tep into THE GAMEROOM for good food, great times, and friendly rivalries," identifies the "GAMEROOM ARCADE," and asks consumers to "GET THE LATEST DEALS FROM THE GAMEROOM". *Id*.

The FAQ page does the same. *Id*. It asks, among other things, "What attraction and dining options does THE GAMEROOM feature?"; "Where is THE GAMEROOM located?"; "Does THE GAMEROOM charge admission?"; "Does THE GAMEROOM have other locations?"; "Is THE GAMEROOM family friendly?"; and "How do I sign up for THE GAMEROOM offers & promotions?" (SDF # 4). These are consumer-facing uses of THE GAMEROOM without "Powered by Hasbro" forming part of the individual designation. (SDF # 4, 25).

KH FEC's own trademark filings further confirm that THE GAME ROOM/THE GAMEROOM was conceived as a designation capable of standing independently from the Hasbro tagline. (SDF # 4, 23-24). In June 2021, KH FEC applied to federally register THE GAME ROOM as a standard-character mark, without limitation to any particular font, style, size, color, or logo. (SDF # 4, 24). "Powered by Hasbro" was not part of the applied-for mark. KH FEC sought the mark for services including gaming and amusement-center entertainment, incentive and stored-value programs, and restaurant and bar services. *Id*. KH FEC later filed a second application for a design containing "TGR THE GAMEROOM ATTRACTIONS ARCADE DINING RETAIL"; again,

"Powered by Hasbro" was not part of the designation submitted for protection. (SDF # 4, 23-24).

### C. Hasbro Publicly Presented THE GAMEROOM as a Hasbro-Branded Venture, Not Merely an Unrelated Licensee's Business

Hasbro now emphasizes that it does not technically "own or operate" THE GAMEROOM and characterizes itself principally as a licensor. (SDF # 7-8). Plaintiff does not contend that every operational task was performed by Hasbro. (SDF # 8). But Hasbro's own public statements and marketplace conduct present a substantially more active relationship than the Motion's description suggests. (SDF # 7-10).

In 2018, public reporting announced that Kilburn Live had entered into an agreement with Hasbro to "create, build and operate" Hasbro-themed entertainment centers and described a contemplated multiple-location rollout across North America. (SDF # 1, 7, 15-17). A Hasbro executive publicly described the venture as Hasbro's "partnership with Kilburn" and stated that it would allow Hasbro to offer consumers an immersive Hasbro play experience. (SDF # 7-8).

When THE GAMEROOM concept was announced for American Dream in 2021, Hasbro's Vice President of Location-Based Entertainment publicly described THE GAMEROOM as "the next evolution of modern social entertainment," anchored by Hasbro's "multi-generational brands," and designed to engage "everyone" and "guests of all ages". (SDF # 2, 7-8). Public reporting characterized the project as a concept being brought to American Dream by Hasbro and Kilburn Live and referred to it as "Kilburn Live and Hasbro's newest concept". (SDF # 7-8).

Hasbro's own corporate statements are even more direct. (SDF # 6-8). In Hasbro's July 2024 Second Quarter Financial Results remarks, Hasbro CEO Chris Cocks discussed the company's digital gaming activities and licensing opportunities across PC, console, mobile, and casino, and then stated: "We also launched several partner-led, Hasbro-branded properties," expressly identifying "The Gameroom" among those properties. (SDF # 6, 14). Although Hasbro described the venue as "partner-led," Hasbro itself





BERSTEIN LAW, PC
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660

publicly told investors that "we" launched THE GAMEROOM and identified it as a "Hasbro-branded" property. (SDF # 3, 6, 14).

Hasbro also used THE GAMEROOM as a venue for Hasbro's own promotional activity. (SDF # 6-10). In September 2024, a public release announced that "HASBRO HOSTED" a TRANSFORMERS ONE-themed football watch party at THE GAMEROOM, and stated that Hasbro hosted the public event at the venue. *Id*. The same release described Hasbro's business as encompassing both "digital games and services" and "location-based entertainment". (SDF # 6). Hasbro's own description of its business therefore places digital gaming and physical entertainment within the same Hasbro consumer-entertainment ecosystem. (SDF # 3, 6, 14).

### D. The Public Record Likewise Shows a Substantive Connection Between Kilburn Media and the Hasbro Venture

Kilburn Media similarly characterizes itself as merely a guarantor of KH FEC's obligations. Manuel Decl. ¶¶ 3–10. Yet the public record presents a broader relationship. (SDF # 15-17).

The 2018 Toy World article identified Mark Manuel as "Kilburn Media CEO" when discussing the Hasbro entertainment venture. *Id*. Manuel publicly characterized the project as the "initial step into a wider partnership with Hasbro" and as an extension of "our business of creating and building unique experiences". *Id*. That description differs materially from the Motion's present characterization of Kilburn Media as simply standing behind another entity's contractual obligations. *Id*.

Defendants' own License Agreement also reflects overlapping personnel. *Id*. It identifies KH FEC as the licensee, but identifies Mark Manuel (now the declarant speaking for Kilburn Media) as KH FEC's licensee contact and "President & Manager," using an email address at the kilburnmedia.com domain. *Id*. The agreement separately identifies Kilburn Media and Kilburn Live as guarantors. (SDF # 16-17). Plaintiff does not contend that these facts alone collapse the entities or establish the precise allocation of internal responsibilities. (SDF # 16). They do, however, form part of the factual record

BERSTEIN LAW, PC
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660

concerning the relationship among Kilburn Media, KH FEC, Kilburn Live, Hasbro, and the development of THE GAMEROOM. (SDF # 15-17).

The concept was also publicly presented from its inception as potentially scalable, not as an enterprise inherently confined to a single New Jersey location. (SDF # 1, 15, 19). The 2018 announcement described a multiple-location North American rollout, and later public materials continued to contemplate additional locations. (SDF # 1, 15, 19).

### E. The Discovery Record Does Not Establish an Absence of Evidence

Finally, Defendants characterize the discovery history as demonstrating that Plaintiff "has no evidence." (Mot. at pg. 4). The procedural history is relevant to that characterization.

In the parties' November 2025 Rule 26(f) Report, both sides expressly contemplated substantial discovery into the very subjects now presented as supposedly settled—including Defendants' use of THE GAMEROOM, digital and keyword advertising, consumer confusion, marketing, historical branding, damages, and third-party advertising information. (SDF # 21).

Thereafter, Defendants filed a Motion for Judgment on the Pleadings in January 2026. (SDF # 20-21). Following amendment of the complaint, Defendants filed a second Motion for Judgment on the Pleadings in March 2026, which the Court denied on April 23, 2026. *Id.* At that point approximately two months remained before the June 29th fact-discovery cutoff. *Id.* Defendants did not serve their first written discovery until May 29, 2026, making Plaintiff's responses due on the discovery cutoff itself. *Id.* Plaintiff requested a stipulated continuance on June 19th; Defendants declined on June 23rd. (SDF # 21). Plaintiff thereafter sought relief from the Court on July 7th. *Id.*

Plaintiff ultimately served written responses asserting objections on June 29th. (SDF # 20). Because Defendants had served their first discovery only thirty-one days earlier, the existing schedule left no interval after those responses for ordinary meet-and-confer efforts, depositions based upon the responses, or discovery-motion practice before

**BERSTEIN LAW, PC**
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660

the cutoff. (SDF # 20-21). That procedural history does not eliminate the evidentiary record now before the Court, including the marketplace materials, Defendants' own contractual documents, Hasbro's corporate statements, THE GAMEROOM website, and KH FEC's trademark filings described above. (SDF # 21-22).

## III. ARGUMENT

Summary judgment is appropriate only where the moving party establishes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. A defendant moving for summary judgment bears both the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Defendants may satisfy that initial burden by affirmatively negating an essential element of Plaintiff's claims or by demonstrating that Plaintiff lacks evidence sufficient to establish an essential element on which it bears the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–325, 106 S.Ct. 2548, 2552–2554 (1986).

A conclusory assertion that Plaintiff lacks evidence is insufficient. *Id*. at 326. Defendants must identify the particular element allegedly unsupported and demonstrate the absence of evidence concerning that element. If Defendants fail to carry their initial burden, Plaintiff has no obligation to produce further evidence. *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102–1103.

Moreover, summary judgment is particularly ill-suited to trademark disputes presenting competing factual evidence. Trademark cases are "intensely factual" in nature, and summary judgment is therefore "generally disfavored" where material factual disputes remain. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012). Genuine disputes concerning confusing similarity or secondary meaning likewise require resolution by the factfinder. *Interstellar Starship Services, Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111–1112 (9th Cir. 1999).

/ / /

/ / /

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

### A. Defendants' "No Evidence" Premise Is Incorrect and Triable Issues Concerning Hasbro's and Kilburn Media's Participation in the Challenged Conduct Exist.

Defendants' threshold argument rests on an incorrect premise. They contend that Plaintiff has "no evidence whatsoever" because Plaintiff did not propound affirmative discovery, served objections to Defendants' written discovery, and did not provide a written expert report. (Mot. 4–6.) None of those circumstances permits Defendants to disregard the evidence actually before the Court. Rule 56 asks whether the record contains evidence creating a genuine dispute of material fact—not how the nonmovant acquired that evidence. Indeed, Rule 56 expressly permits reliance upon declarations, documents, electronically stored information, admissions, and "other materials." Fed. R. Civ. P. 56(c)(1)(A). Once a movant carries its initial burden, the nonmovant need only produce sufficient evidence to create a genuine factual dispute. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105 (9th Cir. 2000).

Plaintiff has done so here.

#### 1. Plaintiff's Discovery Responses Do Not Bar Evidence.

Defendants served their first written discovery on May 29, 2026, making Plaintiff's responses due June 29—the very day fact discovery closed. (Berstein Decl. ¶¶ 13–15.) Plaintiff timely responded and asserted objections. (Id. ¶ 16.) Defendants never moved to compel further responses, never obtained an order overruling Plaintiff's objections, and never obtained an order requiring Plaintiff to produce documents withheld pursuant to those objections. (Id. ¶¶ 17–20.) Plaintiff consequently violated no discovery order. (Id.)

A party dissatisfied with objections must challenge them through a motion to compel. *Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 588 (C.D. Cal. 1999). Rule 37(b), in turn, authorizes evidentiary sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Thus, a discovery order must exist before sanctions under Rule 37(b) may be imposed. *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 311 (C.D. Cal. 2020). Where the requesting party

BERSTEIN LAW, PC
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

never pursued a motion to compel, it cannot obtain the practical equivalent of an evidentiary sanction after discovery closes. *In re PFA Insurance Marketing Litig.*, 696 F. Supp. 3d 822, 834 (C.D. Cal. 2022).

Rule 37(c)(1) does not change that result. It separately addresses information required to be disclosed under Rule 26(a) or supplemented under Rule 26(e); it does not transform every timely objection to party discovery into an automatic evidentiary forfeiture. See *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740-742 (9th Cir. 2021). Defendants identify no order determining Plaintiff's objections were improper and no violated order requiring production of the evidence offered here.

The expert-report issue is similarly narrower than Defendants suggest. Plaintiff acknowledges that its expert designation was not accompanied by a Rule 26(a)(2)(B) report. (Berstein Decl. ¶¶ 26–31.) Whatever consequences that circumstance may have for undisclosed expert opinions, Rule 37(c)(1) does not erase Plaintiff's independent percipient testimony, documentary evidence, party admissions, public corporate statements, or other non-expert evidence. See *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826-827 (9th Cir. 2011). Defendants therefore cannot bootstrap an expert-disclosure issue into the proposition that Plaintiff possesses "no evidence whatsoever."

**2. Plaintiff is no Limited to a Secondary-Liability Theory.**

Defendants next contend that Hasbro and Kilburn Media can be liable, "if at all," only secondarily because neither physically operates THE GAMEROOM. (Mot. 5.) That premise likewise sweeps too broadly. The Lanham Act reaches a defendant's own use of a challenged designation in connection with the advertising or offering of services. Physical ownership or day-to-day operation of the underlying venue is not the test. See *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012).

Nor does licensor status itself foreclose direct liability. In *Gianni Versace, S.p.A. v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1027 (N.D. Cal. 2018), the defendant operated through licensees yet could be directly liable where it

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

licensed the challenged designation, worked with licensees to promote the products, and participated in branding and marketing. *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1101 (N.D. Cal. 2021), therefore does not establish immunity whenever another entity performs the ultimate retail operation; its inquiry was whether the defendant itself used the marks or merely facilitated somebody else's use.

Here, evidence permits the former inference as to Hasbro. Hasbro's own 2024 investor remarks state: "We also launched several partner-led, Hasbro-branded properties, including . . . The Gameroom." (Elden Decl. ¶¶ 26–32, Ex. D.) Hasbro's public release later announced that "Hasbro hosted" a Transformers promotional event "at THE GAMEROOM Powered by Hasbro." (Id. ¶¶ 33–38, Ex. E.) Earlier public materials likewise quote Hasbro's Vice President of Location-Based Entertainment describing THE GAMEROOM's design and stating that "we are focused" on providing its entertainment experience. (Id. ¶¶ 18–25.) Those facts permit a reasonable jury to find affirmative promotion and commercial use by Hasbro itself, not merely passive permission for an unrelated licensee to use Hasbro intellectual property.

The marketplace evidence further undermines the premise that Hasbro's only connection is a remote license. THE GAMEROOM website repeatedly uses "THE GAMEROOM" standing alone—including "GAMEROOM ARCADE" and "GET THE LATEST DEALS FROM THE GAMEROOM"—without "Powered by Hasbro" accompanying each use. (Elden Decl. ¶¶ 39–55, Exs. F–G.) KH FEC likewise sought federal registration of THE GAME ROOM as a standard-character mark and later of TGR THE GAMEROOM ATTRACTIONS ARCADE DINING RETAIL; neither applied-for designation included "Powered by Hasbro." (Id. ¶¶ 87–100, Exs. H–J.) The record therefore contradicts Defendants' categorical assertion that the accused designation invariably exists only as the combined phrase "THE GAMEROOM Powered by Hasbro."

### 3. Triable Issues Exist as to Secondary Liability.

Even if the Court applies secondary-liability principles, Defendants still cannot obtain summary judgment by assigning themselves the labels "licensor" and "guarantor."

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

Contributory liability may arise where a defendant intentionally induces infringement or continues supplying a product or service with knowledge of infringement. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Vicarious liability may exist where the parties have an actual or apparent partnership, authority to bind one another, or joint ownership or control. *Id*. at 802.

Defendants' reliance on Gibson Guitar Corp. v. Viacom International Inc., No. CV 12-10870 DDP (AJWx), 2013 WL 2155309, at *4-6 (C.D. Cal. May 17, 2013), therefore proves only that a passive licensing relationship, without more, is insufficient. Plaintiff's evidence supplies the "more". *Gianni Versace*, 328 F. Supp. 3d at 1027 (licensor's participation in promotion and branding supported liability).

The evidence likewise permits a materially different view of Kilburn Media's role from the Motion's description of a mere financial guarantor. Public materials identified Mark Manuel as Kilburn Media's CEO while he characterized the Hasbro venture as a "wider partnership with Hasbro" and an extension of "our business" of creating and building experiences. (Elden Decl. ¶¶ 12–17.) Hasbro personnel likewise publicly described a "partnership with Kilburn." (Id. ¶ 17.) More significantly, Defendants' own License Agreement identifies the same Mark Manuel—Kilburn Media's President and Manager—as KH FEC's "Licensee Contact," using his kilburnmedia.com email address, while the contractual materials identify Kilburn Live and Kilburn Media as guarantors. (Id. ¶¶ 79–85.) Other public materials identify Kilburn Live as a division of Kilburn Media. (Id. ¶ 85.)

These circumstances do not compel a finding of liability, but that is not Plaintiff's burden on Defendants' Motion. They permit reasonable competing inferences regarding the actual relationship among Hasbro, Kilburn Media, Kilburn Live, and KH FEC; the extent of their participation in developing and promoting THE GAMEROOM; and whether their relationship exceeded an arm's-length license and guaranty. See *Bangkok Broadcasting & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1109 (C.D. Cal. 2010).

Defendants' declarations may support their preferred characterization. The

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

contrary evidence supports another. On summary judgment, the Court cannot weigh those competing accounts or draw the resulting inferences for Defendants. Because Plaintiff has submitted evidence from which a reasonable factfinder could conclude that Hasbro itself participated in commercial use and promotion of THE GAMEROOM and that Hasbro's and Kilburn Media's relationships with the operating entities materially exceeded the passive roles portrayed in the Motion, summary judgment on this ground must be denied.

### B. LIKELIHOOD OF CONFUSION CANNOT BE RESOLVED AS A MATTER OF LAW.

Defendants' motion asks the Court to resolve likelihood of confusion, an inherently fact-intensive inquiry, as though the case were confined to a single keyword advertisement. It is not. When Defendants previously raised substantially similar likelihood-of-confusion arguments on the pleadings, the Court found them "ill-suited for resolution on a Rule 12 motion without the benefit of a more fulsome factual record." (Dkt. 59 at 7.) The summary-judgment record now contains affirmative marketplace evidence bearing on those issues, including repeated consumer-facing use of THE GAMEROOM or GAMEROOM without "Powered by Hasbro," KH FEC's applications to register THE GAME ROOM/THE GAMEROOM without that tagline, THE GAMEROOM's Internet-based customer-acquisition functions, and marketing directed to adults, couples, companies, and other gaming and entertainment consumers. (SDF # 2–4, 23–27.)

The *Sleekcraft* factors therefore cannot be resolved by adopting Defendants' preferred characterization of the record. *Network Automation* identifies four factors as particularly important in the keyword-advertising context, but it also emphasizes that the *Sleekcraft* inquiry is flexible and turns on the context presented. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1146 (9th Cir. 2011). Here, Plaintiff's infringement theory is not confined to keyword bidding. The record includes direct use of THE GAMEROOM/GAMEROOM on the official website and other

consumer-facing materials, including uses without "Powered by Hasbro." (SDF # 4, 25.)

**1. Strength of the Marks.**

Determining a mark's strength requires an evaluation of two distinct considerations: the mark's conceptual distinctiveness and its commercial strength in the marketplace. See *Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1270 (S.D. Cal. 2018). Here, Defendants fail to establish that the strength factor favors them as a matter of law because their showing focuses on asserted conceptual weakness while offering no meaningful evidence establishing commercial weakness.

Defendants acknowledge that commercial strength is measured by "actual marketplace recognition," yet they identify no evidence concerning Plaintiff's commercial success, advertising, length of use, public recognition, or the actual marketplace penetration of the third-party marks on which they rely. (Mot. at 8:9; SDF # 23–24.) Defendants instead identify third-party registrations containing "game room" or "gameroom" and examples in which examining attorneys required disclaimers in different composite marks. (Mot. at 8:18–9:14.) Those records may be argued as evidence of conceptual weakness, but they do not establish as an undisputed fact that the cited third-party marks are actually used, recognized, or encountered by consumers in Plaintiff's marketplace. (SDF # 23–24.) Thus, they do not resolve commercial strength.

As to conceptual strength, Defendants characterize Plaintiff's marks as "not inherently distinctive" and "merely descriptive." (Mot. at 8:11–13.) That characterization is at least disputed by Plaintiff's federal registrations on the Principal Register, which were not obtained through a Section 2(f) claim of acquired distinctiveness, and by the USPTO's 2025 acknowledgement of Plaintiff's declarations of incontestability. (SDF # 23–24.) Incontestability does not, standing alone, make a mark strong for *Sleekcraft* purposes, but neither does the cited third-party prosecution history permit Defendants to label Plaintiff's marks weak as a matter of law. As the Court previously observed, "incontestable status can be an indication of a mark's relative strength." (Dkt. 59 at 5.)

Because commercial strength remains unresolved and the record permits

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

competing conclusions concerning conceptual strength, this factor cannot be resolved for Defendants on summary judgment.

**2. Evidence of Actual Confusion.**

Defendants also rely heavily on the absence of a consumer survey, Plaintiff's expert-report issue, the absence of an identified confused consumer, and declarations that Hasbro and Kilburn Media themselves received no report, complaint, inquiry, or misdirected communication suggesting affiliation with Plaintiff. (Mot. at 9:15–10:14; SDF # 5, 22.) As discussed above, whatever consequence the expert-disclosure issue may have for undisclosed expert opinions, it does not eliminate Plaintiff's percipient testimony, documentary evidence, marketplace materials, or Defendants' own admissions and records.

More importantly, proof of actual confusion is not required to establish likely confusion. *Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999). Indeed, in *Network Automation*, the absence of actual-confusion evidence was accorded no weight where neither party presented such evidence. *Network Automation,* 638 F.3d at 1144. Defendants' declarations establish, at most, that Hasbro and Kilburn Media say they personally received no such communications; they do not establish that no consumer confusion occurred, that no other entity associated with THE GAMEROOM received such communications, or that confusion is unlikely as a matter of law. (SDF # 5.) The absence of a survey or identified consumer is therefore evidence Defendants may argue, but it does not independently warrant summary judgment.

**3. Type of Services and Purchaser's Degree of Care.**

Defendants have not established that the "type of services and purchaser's degree of care" factor weighs in their favor as a matter of law. Their motion refers generically to the sophistication of "[c]onsumers who use the internet for shopping," "regular internet users," and "the reasonably prudent online shopper." (Mot. at 10:15–24.) That designation encompasses virtually the entire purchasing public without addressing the actual consumer base for the services at issue.

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

*Lerner & Rowe* does not eliminate that transaction-specific inquiry. *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 722 (9th Cir. 2024). The record here concerns free-to-play online gaming on Plaintiff's side and casual gaming and entertainment experiences on THE GAMEROOM's side, including arcade play, date nights, dining, cocktails, and social events marketed to ordinary consumers rather than expert purchasers. (SDF # 2–3, 25–27.) A reasonable factfinder could conclude that consumers selecting these recreational services do not exercise the heightened care associated with expensive or specialized purchases. Defendants' generalizations about Internet literacy therefore do not resolve this factor.

**4. Labeling and Appearance of Advertisements.**

To establish the labeling-and-appearance factor from *Network Automation*, Defendants cite *Brookfield* and argue that confusion is dispelled where search results distinguish competing sources and a consumer who clicks a result reaches a webpage identifying the defendant. (Mot. at 11:19–23.) *Brookfield*'s hypothetical involved search results identifying materially different domain names and a landing page that clearly identified the defendant. *Brookfield*, 174 F.3d at 1044. But the inquiry after *Network Automation* is even more fact-specific—the question turns on what the consumer actually saw in the challenged advertisement and surrounding search-results context. *Network Automation*, 638 F.3d at 1153.

Defendants do not establish as an undisputed fact the exact text, labeling, placement, and surrounding search-results context of each challenged advertisement. General propositions about Google's layout cannot substitute for evidence of the particular challenged presentation.

Nor does the appearance of the landing website resolve Plaintiff's broader infringement theory. Defendants repeatedly contend that "THE GAMEROOM" never appears without "Powered by Hasbro," yet the official website itself repeatedly uses THE GAMEROOM or GAMEROOM standing alone in consumer-facing copy, including "Step into THE GAMEROOM," "GAMEROOM ARCADE," and "GET THE LATEST

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

DEALS FROM THE GAMEROOM." (SDF # 4, 25.) KH FEC likewise applied to register THE GAME ROOM as a standard-character mark and later THE GAMEROOM in a design without "Powered by Hasbro." (SDF # 23–24.) On this record, Defendants cannot obtain summary judgment by assuming that every consumer encounter with the challenged designation necessarily includes an unambiguous "Powered by Hasbro" source identifier.

**5. Proximity of the Services.**

Genuine issues of material fact regarding the proximity of the parties' services preclude resolution of this factor as a matter of law. The services offered under the parties' respective marks overlap in part and are otherwise closely related. Direct competition is not required where the services are sufficiently related that consumers could reasonably associate them with a common source, sponsorship, or affiliation. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012).

Defendants' services are marketed not only to children, but also to adults, couples on date nights, companies hosting corporate events, diners, and social groups ranging from approximately 10 to more than 1,000 persons. (SDF # 2, 25–27.) THE GAMEROOM uses its website to acquire customers, take or facilitate reservations, advertise promotions and events, and permit consumers to buy, check, and reload Gamecards. (SDF # 1, 3, 25.) Plaintiff's website enables game-playing adults to access free-to-play casino-style games including slots, blackjack, poker, and bingo. (SDF # 26–27.) A reasonable jury could find proximity because both offerings concern gaming and entertainment, reach overlapping classes of adult entertainment consumers, and use Internet-based channels to reach and transact with those consumers.

**6. Similarity of the Marks.**

A genuine dispute of material fact exists as to the similarity of the marks because the record contains competing evidence concerning how the designations appear in the marketplace. Defendants emphasize the visual differences between the parties' website-header logos and the presence of "Powered by Hasbro." (Mot. at 15:17–16:10.) But the

challenged designation does not appear in only that form.

Defendants' official website repeatedly uses "THE GAMEROOM" and "GAMEROOM" without the tagline, including "Step into THE GAMEROOM for good food, great times, and friendly rivalries," "GAMEROOM ARCADE," and "GET THE LATEST DEALS FROM THE GAMEROOM." (SDF # 4, 25.) If a jury compares those word uses with MY GAMEROOM and MYGAMEROOM, it could reasonably find substantial similarity in sight, sound, meaning, and commercial impression. KH FEC's own trademark filings further undermine Defendants' categorical premise that "Powered by Hasbro" necessarily forms part of the designation consumers encounter: KH FEC sought protection for THE GAME ROOM as a standard-character mark and later for a design prominently featuring THE GAMEROOM, neither of which included the tagline. (SDF # 23–24.)

The different design elements in the parties' website-header logos remain evidence Defendants may present to the factfinder. But those differences do not eliminate the conflicting marketplace evidence or permit the Court to select one presentation of the marks and disregard the others. Because the similarity analysis depends on how the factfinder weighs these competing marketplace presentations, this fact-intensive inquiry cannot be resolved for Defendants as a matter of law.

**7. Marketing Channels.**

Defendants are correct that the mere fact that both parties use the Internet, standing alone, carries limited weight because Internet advertising is ubiquitous. Plaintiff need not overstate that factor. The record, however, involves more than two unrelated businesses that happen to maintain websites. Both use Internet-based channels to reach consumers seeking gaming and entertainment; THE GAMEROOM's website is used for customer acquisition, bookings, events, promotions, and Gamecard functions; and Plaintiff's theory includes competition for consumers at the point of online search. (SDF # 3, 11, 25–27.) At minimum, the shared Internet channel does not establish non-confusion as a matter of law and must be weighed with the remaining factors.

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

**8. Defendants' Intent.**

Defendants contend "[t]here is no evidence of intentional infringement by defendants." (Mot. at 17:5.) But intent to confuse is not required for trademark infringement, and the absence of intent is of limited significance to whether consumers are likely to be confused. *Brookfield*, 174 F.3d at 1059. The KH FEC prosecution record shows applications for THE GAME ROOM/THE GAMEROOM without "Powered by Hasbro" and USPTO office actions identifying potentially conflicting marks. (SDF # 23–24.) That evidence is relevant background, but Plaintiff need not—and does not—contend that an examining attorney's office action, standing alone, proves that Hasbro or Kilburn Media intended to confuse consumers. The appropriate conclusion is narrower: Defendants' asserted lack of intent does not establish lack of likely confusion and therefore does not support summary judgment.

**9. Likelihood of Expansion of Product Lines.**

The expansion factor likewise does not support summary judgment. *Sleekcraft* explains that "[w]hen goods are closely related, any expansion is likely to result in direct competition." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979). Consistent with that principle, *Network Automation* treats expansion as unimportant where the parties already compete or their offerings are already sufficiently related. *Network Automation*, 638 F.3d at 1144.

Plaintiff therefore does not rely on geographic expansion of THE GAMEROOM's existing venue concept as though it necessarily established product-line expansion into Plaintiff's precise online platform. The public evidence of contemplated additional locations throughout the United States and Canada is nevertheless relevant to Defendants' repeated portrayal of THE GAMEROOM as a permanently isolated, single-location New Jersey business and to the broader marketplace context in which consumers may encounter the designation. (SDF # 1, 15, 19.) For *Sleekcraft* purposes, however, the eighth factor is at most neutral or of limited weight where Plaintiff's evidence already places the parties' gaming and entertainment services in related markets.

Taken together, these genuine disputes of material fact preclude summary judgment in Defendants' favor. Likelihood of confusion is not resolved by simply tallying which party "wins" more factors; it requires a fact-intensive weighing of the evidence as a whole. Here, the record contains conflicting evidence bearing on the strength and presentation of the marks, the consumers and services at issue, direct marketplace use of THE GAMEROOM without the Hasbro tagline, the parties' Internet-facing customer channels, and the context in which consumers encounter the challenged designation.

Those disputes must be resolved by the factfinder rather than by selecting Defendants' preferred inferences on summary judgment.

### C. Plaintiff's UCL and FAL Claims Survive with its Lanham Act Claims.

Defendants' challenges to Plaintiff's UCL and FAL claims add nothing independent to their Motion. Defendants argue only that these state-law claims are derivative of Plaintiff's Lanham Act claims and therefore necessarily fail if the federal claims fail. (Mot. at 17–18.) But, as demonstrated above, genuine disputes of material fact preclude summary judgment on Plaintiff's federal trademark claims, including disputes concerning Defendants' participation in the challenged conduct and the likelihood of consumer confusion.

Defendants' cited authorities therefore do not support dismissal here. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–1263 (9th Cir. 1994), establishes that UCL and Lanham Act claims may be substantially congruent; and *Alsa Refinish LLC v. Home Depot, Inc.*, 2025 WL 2014281, at *6 (C.D. Cal. Mar. 18, 2025), dismissed an FAL claim only after the predicate federal trademark claim failed. Because Plaintiff's Lanham Act claims survive summary judgment, Defendants' derivative challenges to the UCL and FAL claims necessarily fail as well.

/ / /

/ / /

/ / /

BERSTEIN LAW, PC
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's respectfully request this Court deny Defendant's Motion for Summary Judgment.

Dated: August 24, 2026

**BERSTEIN LAW, PC**

David A. Berstein
David A. Berstein
J.R. Dimuzio
Attorneys for Plaintiff My Gameroom, LLC

BERSTEIN LAW, PC
4000 MacArthur Boulevard, Suite 600 East Tower
Newport Beach, California 92660

BERSTEIN LAW, PC
4000 MACARTHUR BOULEVARD, SUITE 600 EAST TOWER
NEWPORT BEACH, CALIFORNIA 92660

# DECLARATION OF ELECTRONIC SERVICE

**Central District of California Case No 01-24-0004-7019**

Service of the attached document was accomplished pursuant to Central District of California, Order Authorizing Electronic Filing, General Order No. 08-03 and Local Rule 5-3.2.1, which provides: "Upon the electronic filing of a document, a 'Notice of Electronic Filing' ("NEF") will be automatically generated by the CM/ECF system and sent by e-mail to: (1) all attorneys who have appeared in the case in this Court and (2) all pro se parties who have been granted leave to file documents electronically in the case pursuant to L.R. 5-4.1.1 or who have appeared in the case and are registered to receive service through the CM/ECF System pursuant to L.R. 5-3.2.2. Unless service is governed by F.R. Civ.P. 4 or L.R. 79-5.3, service with this electronic NEF will constitute service pursuant to the Federal Rules of Civil and Criminal Procedure, and the NEF itself will constitute proof of service for individuals so served".

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 24, 2026, at Newport Beach, California.

By: /s/ David A. Berstein
David A. Berstein, Esq